# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ELIJAH LEE CLAYTON,

           Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,

           Defendant.

_____/

Case No. 1:25-cv-01232-SKO

ORDER ON PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

Plaintiff Elijah Lee Clayton ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.    FACTUAL BACKGROUND

On April 30, 2021, Plaintiff protectively applied for SSI payments, alleging he became disabled on January 1, 2008, due to stage 3 chronic kidney disease, use of a feeding tube/pump, eating disorder, and autism. (Administrative Record ("AR") 20, 127, 145, 272–82.)  Plaintiff was born in 2005 and attained age 18 in 2023.  (AR 36, 126, 144.)  Plaintiff has a limited education and

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 9.)

no past relevant work.  (AR 36, 316.)

**A.    Relevant Evidence of Record[2]**

      **1.    Medical Evidence**

In March 2021, Plaintiff's Individualized Education Program (IEP) for 10th grade indicated that he had difficulty completing assigned homework even with frequent monitoring and reminders, lacked motivation, was easily distracted by peers, was unable to manage his time, and often did not show up for class.  (AR 368, 370–71.)  He had staff support in his biology, math, and world history classes.  (AR 370.)  As of the date of the IEP, Plaintiff was noted to have "5 F's out of 6 classes" and had a grade point average (GPA) of 0.33 and a cumulative GPA of 1.071.  (AR 370.)  The IEP indicated that Plaintiff needed a "minimum 2.0 GPA and 230 credits to graduate with a regular diploma; he is not on track to graduate at this time."  (AR 370.)

Plaintiff, aged 16, presented for a psychological assessment by Steven Swanson, Ph.D., in September 2021.  (AR 483–87.)  Dr. Swanson administered a clinical interview, Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), and Wechsler Memory Scale-Fourth Edition (WMS-IV).  (AR 485–86.)  Based on these procedures, Dr. Swanson found Plaintiff's full-scale IQ score to be in the "borderline" range, but his memory was within normal limits and WMS-IV testing did not show any weakness in memory functioning.  (AR 486.)  Dr. Swanson further found that Plaintiff's form and content of thought were "within normal limits" and there was "no evidence of serious psychological disturbance."  (AR 485, 487.)

In March 2024, Plaintiff, aged 18, presented to Chase D. Hixson, PA-C, to establish care in March 2024.  (AR 507–511.)  Plaintiff's mother reported that he had a history of chronic kidney disease and learning disability.  (AR 507.)  Plaintiff reported that he enjoyed school and his grades were "good."  (AR 507.)  Plaintiff's diagnoses of attention deficit hyperactive disorder (ADHD) and autism were noted.  (AR 507.)

That next month, Plaintiff attended a follow-up appointment with PA Hixson.  (AR 512–15.)  His diagnoses of ADHD and autism were again noted.  (AR 512.)  Plaintiff reported that he had

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

never seen a psychiatrist or behavioral health therapist.  (AR 512.)

### 2.    Opinion Evidence

Following his psychological assessment in September 2021, Dr. Swanson opined that Plaintiff

> has the ability to understand and respond to increasingly complex requests, instructions, or questions in an age-appropriate manner.  He appears to have the ability to communicate by understanding, initiating, and using language in an age-appropriate manner.  There is no evidence of any deficit in ability to engage in age-appropriate physical activities.  He appears to have the ability to socially integrate with peers and adults in a mostly age-appropriate fashion.  He appears to have the ability to respond to stimuli in a mostly age-appropriate manner.  He seems to have the ability to engage in and sustain an activity at a pace that is mostly appropriate for his age.

(AR 487.)

PA Hixson completed a "mental medical source statement" in April 2024.  (AR 762–63.)  In it, he indicated that Plaintiff is precluded for 10 percent of an eight-hour workday from: remembering locations and work-like procedures; understanding and remembering very short and simple instructions; understanding and remembering detailed instructions; carrying out detailed instructions; completing a normal workday and workweek; and traveling in unfamiliar places or using public transportation.  (AR 762–63.)  PA Hixson further opined that Plaintiff is precluded for five percent of an eight-hour workday from: carrying out very short and simple instructions; maintaining attention and concentration for extended periods of time; sustaining an ordinary routine without special supervision; making simple work related decisions; responding appropriately to changes in the work setting; being aware of normal hazards and taking appropriate precautions; and setting realistic goals or making plans independently of others.  (AR 762–63.)

### B.    Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on November 1, 2021, and again on reconsideration on February 11, 2022.  (AR 20, 161–64, 172–74.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 181–226.)

At the hearing on April 18, 2024, Plaintiff appeared telephonically with his attorney and his mother and testified before an ALJ as to his alleged disabling conditions.  (AR 79–90.)  Plaintiff

also testified that he had completed an online application for work as a stocker at Walmart and that he planned to apply for college to become a guidance counselor.  (AR 80–81, 82.)  A Vocational Expert (VE) also testified at the hearing.  (AR 90–92.)

**C.      The ALJ's Decision**

In decision dated July 3, 2024, the ALJ concluded that Plaintiff was not disabled.  (AR 20–38.)  The ALJ conducted the five-step adult disability analysis set forth in 20 C.F.R. § 416.920.[3] (AR 25–28.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since April 30, 2021, the application date (step one).  (AR 25.)  At step two, the ALJ found Plaintiff's following impairments to be severe: chronic kidney disease, borderline intellectual functioning, and neurodevelopmental disorder.  (AR 25, 32.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 32–33.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b) except he can understand, remember, and carry out simple instructions, make commensurate work related decisions, respond appropriately to supervision, co-workers, and work situations, deal with routine changes in the work setting and maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday.

(AR 33–36.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be

---

[3] The ALJ also conducted the three-step child disability analysis set forth in 20 C.F.R. § 416.924 for the period from April 30, 2021, the application date, to April 13, 2023, the date Plaintiff attained the age of 18.  (AR 25–32.)

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours per day, for 5 days per week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

expected to produce the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 29, 34.)

The ALJ determined that Plaintiff had no past relevant work (step four) but, given his RFC, he could perform a significant number of jobs in the national economy (step five), including merchandise marker, mail sorter, and fast-food worker. (AR 36, 37.) The ALJ ultimately concluded that Plaintiff was not disabled since April 30, 2021, the date the application was filed. (AR 37–38.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on May 28, 2025. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the

ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a

specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

Plaintiff contends that his RFC was not supported by substantial evidence because the ALJ independently interpreted medical records without the aid of a medical expert rather than further developing the record. (Doc. 15.) The Commissioner responds that the record was adequately developed and the ALJ's RFC assessment was proper. (Doc. 17.) The Court agrees with the Commissioner and will affirm the ALJ's decision.

### A.    Legal Standard

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). An ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

In making the RFC determination, the ALJ considers those limitations for which there is

record support that does not depend on properly rejected evidence and subjective complaints. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Ford,* 950 F.3d at 1156; *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and [their] decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

**B.      Analysis**

Plaintiff has not demonstrated that the ALJ improperly interpreted medical evidence and was required to develop the record instead.

As set forth above, Dr. Swanson conducted a psychological assessment of Plaintiff in September 2021 and found he can understand and respond to increasingly complex requests, instructions, or questions in an age appropriate manner; can communicate by understanding, initiating, and using language in an age appropriate manner, can engage in age appropriate physical activities; can socially integrate with peers and adults in a mostly age appropriate fashion, can respond to stimuli in a mostly age appropriate manner, and can engage in and sustain an activity at a pace that is mostly appropriate for his age. (AR 487.) The ALJ concluded this opinion was only "partially persuasive." (AR 35.) The ALJ further explained that the finding that Plaintiff "can understand and respond to increasingly complex requests, engage in age-appropriate physical activities, and sustain [pace] appropriate for his age" was "less consistent with the record," specifically with Plaintiff's IEP documenting that had "difficulty completing assigned homework even with frequent monitoring and reminders, lacked motivation, was easily distracted by peers, was unable to manage his time, and often did not show up for class," which necessitated "staff support in biology, math, and world history." (AR 31.)

Plaintiff does not challenge the persuasiveness accorded by the ALJ to Dr. Swanson's opinion. Instead, he contends first that the ALJ improperly "played doctor" in relying on the Plaintiff's IEP to assess limitations in the RFC greater than those opined by Dr. Swanson. (Doc. 15 at 12.) Plaintiff's argument is misplaced. Although ALJs do not have unbridled discretion to do so,

an ALJ is almost always tasked with performing some independent review of medical evidence and translating the same into functional terms.  This is consistent with the ALJ's role as characterized by the Ninth Circuit.  *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").  *See also Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work.").  There is nothing erroneous about the ALJ's review of Plaintiff's IEP as part of their RFC assessment, as an IEP is not the type of information that is beyond the scope of the ALJ's expertise to address independently.  *See, e.g., Vasquez v. Saul*, No. 1:20-CV-00502-SKO, 2021 WL 1736895, at *8 (E.D. Cal. May 3, 2021) (rejecting argument that the ALJ improperly imposed their own lay interpretation of the medical evidence where the ALJ formulated RFC based on their interpretation on, among other things, Plaintiff's high school IEP).

The legal authority on which Plaintiff relies is inapposite.  (*See* Doc. 15 at 14.)  For example, in *Mack v. Saul*, No. 1:18-cv-01287-DAD-BAM, 2020 WL 2731032 (E.D. Cal. May 26, 2020), the ALJ considered evidence following a medical opinion, made an independent evaluation of the diagnosed impairments on plaintiff's ability to work on a function-by-function basis based on that subsequent evidence, and found the effects of any such impairments negligible. *See id*. at *2.  Here, instead of "negligible" impairments, the ALJ ultimately formulated an RFC that included more restrictive limitations than those opined by Dr. Swanson to account for limitations in concentrating, persisting, and maintaining pace (*see* AR 35).  *See Marin v. Comm'r of Soc. Sec.*, No. 1:24-CV-00055-SAB, 2024 WL 3845357, at *8 (E.D. Cal. Aug. 16, 2024) ("Unlike . . . *Mack*, the ALJ here did not interpret raw medical evidence to find Plaintiff less limited than opined by medical providers but considered the lack of objective mental findings in the mental health records and Plaintiff's testimony regarding her symptoms to find her more limited than the State agency physicians opined.").

*Cortez v. Colvin*, Case No. 1:15-cv-00102-EPG, 2016 WL 3541450 (E.D. Cal. June 24, 2016), is likewise distinguishable.  In that case, the ALJ interpreted raw medical evidence to reach

conclusions as to mental impairments, particularly as to improvement in the plaintiff's symptoms when taking his medication. *Id*. at *5. The *Cortez* court noted an "absence in the record indicating the degree to which [p]laintiff's mental impairments affected him, and what, if any, [p]laintiff's medications had on his ability to work." *Id*. at *6.

In contrast, here Plaintiff has not demonstrated that there was any "absence in the record" to allow for proper evaluation. *See Albrecht v. Astrue*, No. 1:11-cv-01319 GSA, 2012 WL 3704798, at *12 (E.D. Cal. Aug. 27, 2012) (Medical expert opinion regarding Plaintiff's impairments "not necessary" where the existing evidence was sufficient to support the ALJ's determination and such an exam was not needed to resolve an inconsistency). *See also Marin*, 2024 WL 3845357, at *8; *Ann M. v. Berryhill*, No. 5:18-CV-01080-KES, 2019 WL 1171160, at *6 (C.D. Cal. Mar. 12, 2019) ("Contrary to the cases cited by Plaintiff, the records in this case provided the ALJ with ample support for his RFC, which was based not on raw data but on treatment notes, which included Plaintiff's subjective complaints, observations by physicians, and the treatment plans.") (internal quotation marks omitted) (distinguishing *Cortez*)). Unlike *Cortez*, the ALJ here found the Dr. Swanson's opinion "partially persuasive" (AR 35)—a finding Plaintiff does not challenge—and properly assessed Plaintiff's RFC based on that opinion and the "entire record" (AR 33). *See Bayliss*, 427 F.3d at 1217; *Mills v. Comm'r of Soc. Sec*., No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."). Plaintiff also does not challenge the ALJ's determination that there are only two medical records since the date Plaintiff turned the age of 18, neither of which "address[es] mental impairments in detail" nor "suggest[s] any worsening of [his] mental or intellectual functioning." (AR 34.) The record, kept open for an additional 14 days after the hearing to submit elementary school records at Plaintiff's request (AR 79), contained Plaintiff's complete treatment records—as counsel conceded (AR 79)—that supported the ALJ's findings, and no "gaps" or inconsistencies were noted. *See Findley v. Saul*, No. 1:18-CV-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (finding the ALJ was not obligated to further develop the record where counsel stated at the hearing that the record was complete). *See*

*also Randolph v. Saul*, 2:18-cv-00555-CLB, 2020 WL 504667, at *8 (D. Nev. Jan. 31, 2020) (same).

Plaintiff next asserts that the "significant transition of Plaintiff from childhood to adulthood after the time of the consultative examination" rendered Dr. Swanson's "stale" and necessitated "guidance from a health care professional." (Doc. 15 at 12–13.) As an initial matter, the mere fact that Dr. Swanson's evaluation was rendered when Plaintiff was 16 years and five months old, or about a year and a half before he turned 18, does not render his opinion "stale."[5] *See David P. v. Saul*, No. 19-cv-01506-BEN-AHG, 2020 WL 4593311, at *1 (S.D. Cal. Aug. 11, 2020) (adopting report and recommendation that held a two-year-old medical opinion was not stale), *vacated and remanded on other grounds sub nom., Politte v. Kijakazi*, No. 21-55341, 2021 WL 5860767 (9th Cir. Aug. 10, 2021). *See also Lampshire v. Comm'r of Soc. Sec.*, No. 2:24-CV-3183-DC-DMC, 2025 WL 3248738, at *3 (E.D. Cal. Nov. 21, 2025) ("Courts throughout the Ninth Circuit have made clear that an opinion is not rendered unpersuasive simply by its date.") (collecting cases).

Moreover, Plaintiff does not specify, much less explain, the impact of such "transition" on his mental or intellectual functioning. *See Smith v. Saul*, No. 1:19-CV-01085-SKO, 2020 WL 6305830, at *8 (E.D. Cal. Oct. 28, 2020) (finding ALJ had no duty to develop record because "[n]one of these [additional] records establish the existence of any new condition not assessed by the ALJ, or show a worsening of Plaintiff's existing conditions."); *Hernandez v. Saul*, No. 1:19-CV-01298-GSA, 2020 WL 6700224, at *8 (E.D. Cal. Nov. 13, 2020) (same). In fact, the record belies any effect.[6] As set forth above, the medical record contained only two treatment notes dated after Plaintiff turned the age of 18, neither of which "address[es] mental impairments in detail" nor "suggest[s] any worsening of [his] mental or intellectual functioning." (AR 34.) Plaintiff testified at the hearing in April 2024 that he had completed an online application for work as a stocker at

---

[5] Plaintiff mistakenly criticizes the ALJ for relying on a "psychological consultative examination performed by Dr. Swanson [that] took place in 2020, when Plaintiff was only fourteen years old" to assess his adulthood RFC. (*Id.* (citing AR 357).) The ALJ did not rely on Dr. Swanson's March 2020 examination; instead, it was Dr. Swanson's *September 2021* evaluation of Plaintiff that the ALJ considered in formulating the RFC. (AR 35 (citing 483–87).)

[6] Plaintiff asserts that the ALJ conceded in the decision that Plaintiff's change in age was "significant." (Doc. 15 at 13 (citing AR 28).) A review of the decision, however, demonstrates that the ALJ's finding that Plaintiff's age was a "changed circumstance" was made in relation to whether Plaintiff had overcome the presumption of continuing nondisability, in view of the prior final agency decision finding Plaintiff not disabled. (AR 28 (citing *Chavez v. Bowen*, 844 F.2d 691, 693–64 (9th Cir. 1988) and Social Security Acquiescence Ruling 97–4(9)).) The "significance" of such change, as the ALJ explained, was that the "rules for childhood disability no longer apply," not that it had created an evidentiary ambiguity or insufficiency that required development of the record. (AR 28.)

Walmart and that he planned to apply for college to become a guidance counselor. (AR 80–81, 82.)

Plaintiff does not dispute this evidence or the ALJ's conclusion drawn therefrom. He also does not specify what additional functional limitations are evidenced in the record but were not accounted for in the ALJ's RFC assessment. *See Lamas v. Saul*, No. 1:19-cv-00852-BAM, 2020 WL 6561306, at *9 (E.D. Cal. Nov. 9, 2020) (holding that although ALJ erred in evaluating a claimant's RFC without support from a medical opinion, such error was harmless where the ALJ found more stringent limitations than any medical opinion). Nor does he otherwise show any inconsistency between the record and his RFC. *See Perry v. Saul*, No. 2:21-CV-00480-EJY, 2022 WL 959160, at *9 (D. Nev. Mar. 29, 2022) ("Nothing in the record, including Plaintiff's recent scans, is obviously inconsistent with the RFC, the calculation of which is the exclusive domain of the ALJ, and must be respected under the deferential substantial evidence standard."); *see also Carbajal v. O'Malley*, No. 1:23-CV-00319-BAM, 2024 WL 382375, at *6 (E.D. Cal. Feb. 1, 2024) ("While Plaintiff argues that the ALJ improperly interpreted the medical evidence [post-dating the state agency physicians' opinions], Plaintiff does not identify what additional functional limitations the ALJ failed to account for in the RFC assessment. The cited medical records do not establish the existence of any new condition not considered by the ALJ, nor are they apparently inconsistent with the RFC.") (internal citations omitted).

Finally, Plaintiff contends that the ALJ improperly discounted PA Hixson's April 2024 mental medical source opinion, creating an "evidentiary gap" that required development of the record. (Doc. 15 at 13–14.) The Court disagrees that the ALJ's evaluation of PA Hixson's was erroneous. The applicable regulations provide that the ALJ will not "defer or give any specific evidentiary weight to any medical opinions," but instead "must explain how persuasive they find the medical opinion by expressly considering the two most important factors for evaluating such opinions: supportability and consistency." *Cross v. O'Malley*, 89 F.4th 1211, 1213 (9th Cir. 2024) (internal quotation marks omitted).

An ALJ cannot reject a medical source's opinion without providing an explanation supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant

12

. . . objective medical evidence." *Id*. at 791–92 (citing 20 C.F.R. § 404.1520c(c)(1); *see also* 20 C.F.R. § 416.920c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id*. at 792 (citing 20 C.F.R. § 404.1520c(c)(2)); *see also* 20 C.F.R. § 416.920c(c)(2). The ALJ's articulation of persuasiveness must show the grounds actually relied upon for the final decision. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

Regarding supportability, here the ALJ found that PA Hixson's "records do not contain any intellectual or psychological testing and do not indicate any significant limitations in each" and instead "note [Plaintiff] was doing well in school." (AR 36.) The lack of a supporting explanation is a proper consideration in evaluating this factor. *See* 20 C.F.R. §416.920c(c)(1) (requiring the ALJ to consider "supporting explanations presented by a medical source."). *See also Woods*, 32 F.4th at 794 (substantial evidence supported finding that medical opinion, expressed in a "fill-in-the-blank questionnaire," was "not persuasive because it is not supported by any explanation" or "pertinent exam findings."); *Ponce v. Comm'r of Soc. Sec.*, No. 1:20-cv-01664-EPG, 2022 WL 196529, at *3 (E.D. Cal. Jan. 21, 2022) (declining to find the ALJ erred in finding a medical opinion unsupported where given on a "checkbox form with no significant narrative explanation" and "no citation to record evidence.") Plaintiff points out that his 2021 IEP showed that he was not "doing well in school," contrary to PA Hixson's notation (Doc. 15 at 13–14), but the notation was made in 2024, three years after the IEP. Thus, it is entirely possible that Plaintiff's academic performance had improved by then. Even if it had not, the ALJ's point was that PA Hixson nevertheless **believed** that it had, yet submitted a mental source statement with extreme limitations that were at odds with someone who was "doing well in school." Additionally, nothing in Plaintiff's argument detracts from the ALJ's primary supportability finding that PA Hixson's treatment records lacked testing or findings to substantiate his opinion, which Plaintiff does not dispute. Plaintiff also does not dispute that PA Hixson's opinion was inconsistent with the overall record, including Dr. Swanson's examination results showing normal memory, memory functioning, and thought content. (AR 36 (citing AR 485–87).)

In the absence of any inadequacy or ambiguity in the record, which Plaintiff has not shown,

the Court concludes that the ALJ had no duty to develop it further and did not err in formulating the RFC.

### V.    CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:    **June 29, 2026**                    /s/ *Sheila K. Oberto*
                                   UNITED STATES MAGISTRATE JUDGE